**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**QUINLAN H. MOTLEY** **CIVIL ACTION**

**VERSUS**

**BOARD OF SUPERVISORS OF SOUTHERN UNIVERSITY AND A&M COLLEGE, ET AL.** **NO. 25-892-JWD-RLB**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to its recommendations, proposed findings of fact, and conclusions of law. Failure to file written objections to the recommendations, proposed findings, and conclusions, within fourteen (14) days after being served, will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 6, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**QUINLAN H. MOTLEY** **CIVIL ACTION**

**VERSUS**

**BOARD OF SUPERVISORS OF SOUTHERN UNIVERSITY AND A&M COLLEGE, ET AL.** **NO. 25-892-JWD-RLB**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Board of Supervisors of Southern University and A&M College's ("Defendant") Motion to Dismiss First Amended Complaint. (R. Doc. 10). Also before the Court are Plaintiff's opposition to the Motion to Dismiss First Amended Complaint and Defendant's reply. (R. Docs. 14; 19). The Court also considers Plaintiff's Motion for Preliminary Injunction and Memorandum in Support (the "Preliminary Injunction Request") and his other documents in support. (R. Docs. 18; 27; 30).

The Court has also *sua sponte* addressed the claims against the Southern University Lab School (the "School") as well as the claims against Director Herman Brister ("Brister") and Southern University Law Center Chancellor John K. Pierre ("Pierre") in their official capacities.[1]

## I. Background

On August 25, 2025, the *pro se*[2] Plaintiff filed suit against Defendant, the School, and Principal Jalynn Davis Jones ("Jones") in the 19th J.D.C. of East Baton Rouge Parish. (R. Doc. 1-3). Plaintiff alleged his child attends the School, and, before the incident detailed below, he

[1] Because the undersigned recommends dismissal of those claims, Plaintiff should be afforded an opportunity to address that recommendation. The objection period of 14 days provides plaintiff with that opportunity.

[2] *Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet, they are not free "from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper-Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (citation omitted). Thus, courts need not "search for or . . . create causes of actions" for *pro se* plaintiffs. *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citation omitted).

often picked his child up from the front entrance of the School, rather than by using the School's designated car line. However, he alleged that, on August 7, 2025, when he attempted to enter the front entrance of the School, Jones denied him entrance. Plaintiff alleged he told Jones that he had a "service-connected disability and requested a reasonable modification to use the front entrance[,]" but he was still denied entrance. (R. Doc. 1-3 at 2). Plaintiff alleged he then pulled the door to enter, and Jones "pushed him backward with force, causing immediate pain and shock[,]" with Plaintiff never crossing the threshold or entering the building. *Id.* Plaintiff alleges Jones then "assumed a threatening posture (balled fists)" and then later reported him as the "aggressor" to the police, resulting in a misdemeanor citation and the officers at the scene saying he "assaulted" someone. (R. Doc. 1-3 at 2, 3). Plaintiff alleges that, without an opportunity to be heard, he was then banned from attending any School events or picking up his children only in the carpool line.

Plaintiff brought the following claims in the original complaint: (1) Americans with Disabilities Act ("ADA"), Title II violation against Defendant, (2) Section 504 of the Rehabilitation Act ("RA") violation against Defendant, (3) Louisiana state law battery and assault civil actions against Jones and Defendant, via respondeat superior, (4) Louisiana state law defamation claim against Jones and Defendant, via vicarious liability, and (5) Louisiana state law intentional infliction of emotional distress claim against Jones and Defendant, via vicarious liability and negligent supervision. (R. Doc. 1-3).

Defendant was not served until September 8, 2025, and, on October 6, 2025, Defendant timely removed the case to this Court, based on its original jurisdiction. (R. Docs. 1; 1-6; 1-7). On October 14, 2025, Defendant filed its first Motion to Dismiss regarding Plaintiff's original complaint. (R. Doc. 6). However, on November 3, 2025, Plaintiff filed a First Amended

Complaint and Demand for Jury Trial (the "Amended Complaint") in State Court. (R. Docs. 10-1; 11-2). As the Amended Complaint was never filed into this Court's record, Defendant filed a Motion to Dismiss First Amended Complaint in the record, attaching the Amended Complaint under seal. (R. Docs. 10; 11-2). Defendant maintains that the Amended Complaint needed to be filed under seal because it contains information prohibited from disclosure under the Family Educational Rights and Privacy Act ("FERPA"). (R. Doc. 10-1 at 2). This Court agrees.

On December 5, 2025, Plaintiff filed a motion to amend in order to cure the issues created by his filing the Amended Complaint only in the 19th J.D.C. of East Baton Rouge Parish, and he also filed a Memorandum in Opposition to Defendant's Motion to Dismiss Amended Complaint. (R. Docs. 13; 14). On December 11, 2025, Defendants filed an Opposition to the Motion to Amend and also filed a Reply Memorandum in Support of Motion to Dismiss Amended Complaint on December 19, 2025. (R. Docs. 16; 19). In summary, the parties completely briefed a motion to dismiss a pleading that had not even been filed.

On December 17, 2025, Plaintiff filed his Preliminary Injunction Request, asking that this Court enter a preliminary injunction against Director Herman Brister ("Brister") and Southern University Law Center Chancellor John K. Pierre ("Pierre"), in their official capacities, enjoining them from, among other things, banning Plaintiff from the School. (R. Doc. 18).

On July 27, 2026, this Court granted Plaintiff's motion to amend in part, and the Amended Complaint was entered into the record, with redactions. (R. Docs. 31; 33). This Court subsequently dismissed Defendant's Motion to Dismiss for Failure to State a Claim as moot. (R. Docs. 6; 31). Considering Plaintiff's *pro se* status and the Court's ability to *sua sponte* address deficiencies in the pleadings, the Court will consider all arguments raised by the parties in the briefings in addressing Defendant's Motion to Dismiss First Amended Complaint (R. Doc. 10).

## II. Law and Analysis

### A. Legal Standards

A Fed. R. Civ. P. 12(b)(6) motion tests the sufficiency of a complaint against Fed. R. Civ. P. 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive such a motion, a complaint must show there is a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Factual assertions are presumed to be true; "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Fed. R. Civ. P. 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts do not presume the truth of conclusory statements but look for facts supporting the pleader's claim. *Twombly*, 550 U.S. at 557.

### B. Relevant Allegations

From its review of the Amended Complaint, the Court finds the following to be the *allegations* most relevant to Defendant's Motion to Dismiss Amended Complaint.

- Plaintiff, a U.S. Army vet, is a parent of a child enrolled at the School. (R. Doc. 13-1 at 1). He is bringing claims against: (i) Defendant, (ii) the School, (iii) Jones, individually, (iv) Brister, in his individual and official capacities, and (v) Pierre, in only his official capacity and "solely for prospective injunctive relief under Ex parte Young." *Id.*
- "Plaintiff is a qualified individual with a disability, including service-connected post-traumatic stress disorder [("PTSD")]." (R. Doc. 13-1 at 2).
- At an unspecified time before the August 7, 2025 incident, detailed below, "Plaintiff requested a reasonable modification to access the front entrance due to disability-related functional limits associated with car-line process and related triggers." *Id.*
- On August 7, 2025, when Jones was present at the front entrance door, Plaintiff was denied entrance even after he informed Jones of his disability and sought a reasonable modification. *Id.* Then, Jones "pushed and otherwise assaulted Plaintiff" and called law enforcement to report that Plaintiff had assaulted her. *Id.*
- Defendant and the School, acting through Brister and with Pierre's approval, imposed a campus and events ban on Plaintiff. *Id.* They "provided no written notice of the factual basis for the ban, cited no governing policy or rule, [] afforded no meaningful opportunity to be

heard before or after the decision[, and conducted an investigation] without interviewing [him], without soliciting or considering his evidence, and without communicated any findings to him." *Id.* "Plaintiff repeatedly asked for the reason and record underlying the ban and for the appeal process. No reason has ever been provided." *Id.*

- Since he told Defendant before the ban that a specific student was present during events that lead to the death of another student, Caleb Wilson, Plaintiff concluded as follows: "The ban followed Plaintiff's protected reports and questions about the death of Caleb Wilson and [his] disability-related access request. The timing and content support the inference that retaliation and interference were a substantial or motivating factor." (R. Doc. 13-1 at 2, 3).
- "The ban continues to harm Plaintiff by blocking his participation in his child's education and school life and by denying disability-related access required by law." *Id.*
- On August 7, 2025, Jones falsely reported to law enforcement and Defendant that Plaintiff assaulted her, causing Plaintiff emotional distress and harm to his reputation. *Id.*

Plaintiff is now bringing: (1) Title II ADA and Section 504 of the Rehabilitation Act discrimination claims against Defendant and the School, (2) ADA and Section 504 retaliation claims against Defendant and the School, (3) a First Amendment 42 U.S.C. § 1983 claim against Brister, individually, (4) a due process 42 U.S.C. § 1983 claim against Brister, individually, (5) a state law defamation claim against Jones, individually, and (6) state law assault and battery claims against Jones, individually. (R. Doc. 13-1). He also seeks prospective relief, under *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), against Brister and Pierre, "in their official capacities to end ongoing violations of federal law [through] rescission of the campus and events ban, implementation of a lawful ADA and Section 504 process, and specific reasonable modification for front-entrance access." (R. Doc. 13-1 at 5).

**C. Arguments of the Parties**

In its Motion to Dismiss Amended Complaint, Defendant argues all of Plaintiff's Title II ADA and Section 504 discrimination claims fail because (i) Plaintiff has not properly alleged he is a qualified individual with a disability because there are no allegations as to how his alleged disability substantially limits one or more of his major life activities, (ii) Plaintiff has failed to allege a claim for failure to accommodate because it is not clear Defendant knew of Plaintiff's

alleged limitations, and (iii) Plaintiff has failed to allege he was excluded due to his disability because he alleges the motivating factor was his disability-related access request and his reports *and* questions about the death of Caleb Wilson. (R. Doc. 10-1). Defendant also argues Plaintiff's Title II ADA and Section 504 retaliation claims fail since (i) he has not alleged he is a qualified individual under the ADA, (ii) he has not alleged he opposed any act or practice made unlawful by the ADA or Section 504 because he has not alleged a violation of such, and (iii) he has not alleged Defendant interfered with him exercising a right under the ADA because he has not alleged he is a qualified individual with a disability, and (iv) he has not alleged he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the ADA. Defendant also argues the Amended Complaint should be dismissed because it was originally improperly served upon Defendant, due to being filed in state court. As the Amended Complaint has since been ordered filed into the record, Defendant has had proper notice via CM/ECF, so the Court will not consider this argument.

In his Memorandum in Opposition to Defendant's Motion to Dismiss Amended Complaint, Plaintiff argues that any pleading deficiency should be cured by leave to amend rather than dismissal. (R. Doc. 14). Plaintiff asserts that Defendants are construing Title II and Section 504 far more narrowly than the statutes permit and maintains that his allegations suffice. Plaintiff also attempts to add additional allegations that he submitted a formal ADA complaint to Defendant's office of compliance and received two written determinations: "(1) a September 24, 2025 'ADA Accommodation Complaint Determination' letter (Case No. 2025036501) closing his complaint without relief, and (2) a November 12, 2025 'Determination of Accommodation(s)' letter (Case No. 2025060701) granting only a 'pickup line accommodation' that effectively restated the same carline process applicable to all parents." (R. Doc. 14 at 3). He also added that,

on November 13, 2025, he videoed people entering and exiting the School's front entrance to show that non-disabled parents were being allowed to use the door while he could not.

Also in his opposition, Plaintiff argues, regarding both his discrimination and retaliation claims, that (i) he has properly alleged he has a disability because he alleges he has PTSD and its limitations prevent him from safely navigating the carline process, something he argues is a major-life-activity limitation, (ii) Defendant and the School receive federal funding and are thus subject to Section 504, (iii) he properly alleged he was denied benefits because he alleges he was banned from campus and school activities, and (iv) he properly alleges he was denied equal access due to his disability since the events followed his reporting issues regarding Caleb Wilson's death *and* his requesting front entrance access due to his PTSD.

In its Reply Memorandum in Support of the Motion to Dismiss Amended Complaint, Defendant argues that the Court should not consider any facts Plaintiff has newly alleged that were not already included in the Amended Complaint.[3] (R. Doc. 19). Defendant also reiterated its prior arguments and noted that even Plaintiff's new allegation that he sought accommodations through formal ADA channels is irrelevant to his retaliation claim because Plaintiff did not seek these accommodations until after the August 7, 2025 event and ban. Defendant also notes that allowing Plaintiff to amend again at this point would be futile, especially considering Plaintiff's Amended Complaint already fails to pass the Fed. R. Civ. P. 12(b)(6) standards.

[3] This Court will not consider Plaintiff's new facts. They are also irrelevant to Plaintiff's discrimination or retaliation claims because Plaintiff's complaints through ADA channels occurred *after* Plaintiff was banned from the School.

**D. Analysis**

**i. Title II ADA and Section 504 Discrimination Claims**

Title II of the ADA and Section 504 of the RA[4] "have identical remedial schemes" and "are generally interpreted interchangeably[.]" *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 573-74 (5th Cir. 2018) (citations omitted). To demonstrate a violation of either Title II of the ADA or Section 504 of the RA, "a plaintiff must prove '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.'" *Id.,* at 574. "The two statutes differ only in the application of the last element. Under Section 504, a defendant is prohibited from excluding an otherwise qualified individual 'solely' by reason of a disability, whereas the ADA more broadly prohibits exclusion 'by reason of such disability.' *Id.* 'Thus, while [S]ection 504 establishes a 'sole cause' test for causation, the ADA instead establishes a 'motivating factor' test.'" *Herbert v. St. James Par. Sch. Bd.,* No. CV 25-758, 2025 WL 1884800, at *7 (E.D. La. July 8, 2025) (citations omitted). As Defendant rightly argues, Plaintiff has failed to properly allege these requirements.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Here, Plaintiff alleges no specific facts of his PTSD circumstance and diagnosis. Instead, Plaintiff conclusively argues that his PTSD limits his ability to engage in "major life activities." *Hale v. King*, 642 F.3d 492,

[4] Title II of the ADA applies to public entities. 42 U.S.C. § 12131(1). Meanwhile, "the RA prohibits discrimination in federally-funded programs and activities[.]" *Kemp v. Holder,* 610 F.3d 231, 234 (5th Cir. 2010).

500 (5th Cir. 2011) (quotations and citation omitted). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* The only issues that Plaintiff alleges his PTSD causes are "functional limits associated with the carline process and related triggers." (R. Doc. 13-1 at 2). It appears that Plaintiff is able to drive in Baton Rouge and around Southern's campus, yet claims his disability prevents him from waiting in carpool with the other parents. Carpool and school pickup processes are not major life activities. *Contrast Epley v. Gonzalez*, 860 F. App'x 310, 313 (5th Cir. 2021) ("[He] has alleged sufficient facts that . . . demonstrate that his PTSD and [traumatic brain injury] substantially limit his ability to think and sleep. In addition to describing the symptoms that these conditions cause—which include 'migraine attacks, confusion during stressful situations, sleeping disturbances, . . . anxiety and panic attacks, vivid and distressing flashbacks and nightmares'—his factual allegations illustrate how these conditions affected his life at the time of the underlying incident."). Even if they were major life activities, Plaintiff fails to allege facts—as opposed to conclusions—that show Defendant was informed of his disability limitations in a manner that sufficiently informed Defendant as to what accommodations may be reasonable in light of the circumstances of that disability.

Entities covered by the ADA are "obligated to make reasonable accommodations only to the physical or mental *limitations* resulting from the disability that is known to the employer." 29 C.F.R. 1630.9, App. (1995). "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the [covered entity], as is often the case when mental disabilities are involved, the initial burden rests primarily upon the [plaintiff] to specifically identify the disability *and resulting limitations*, and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 165 (5th Cir.

1996) (emphasis added). Here, Plaintiff provides only conclusory allegations that he "requested a reasonable modification to access the front entrance due to disability-related functional limits associated with the car-line process and related triggers [and] informed Defendant Jones of his disability and requested a reasonable modification[.]" (R. Doc. 13-1 at 2). This is insufficient as Plaintiff has failed to allege he ever communicated *specific limitations* to Defendant, instead only stating he had PTSD and needed to use the front entrance of the School to pick up his child. *See Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio,* 633 F. App'x 214, 215-216 (5th Cir. 2015) (12(b)(6) motion regarding ADA and Section 504 discrimination claims granted when the plaintiff failed to allege he informed the covered entity of *limitations* resulting from his attention deficit disorder other than providing it with his diagnosis). This distinction is important because the ADA requires reasonable accommodations for limitations, not disabilities. *Taylor*, 93 F.3d at 164. As Plaintiff has failed to allege Defendant ever knew of Plaintiff's specific limits, he has failed to meet the second requirement of an ADA or Section 504 discrimination claim. *See Windham v. Harris Cnty., Texas,* 875 F.3d 229, 236 (5th Cir. 2017) (citation omitted) (emphasis in original) ("Mere knowledge of the disability is not enough; the service provider must also have understood 'the limitations [the plaintiff] experienced . . . *as a result* of that disability.'").

For Plaintiff's Section 504 discrimination claim, even if (i) Plaintiff's major life activities are affected by his carpool limitations and (ii) he did inform Defendant of his specific carpool limitations brought on by his PTSD, Plaintiff has failed to properly allege Defendant's discrimination occurred solely because of his disability. Rather, it is apparent Plaintiff believes he was also banned from the School and its front entrance because he previously raised concerns regarding the identity of a student he alleges was present during the events leading to the death of Caleb Wilson. (R. Doc. 13-1 at 2, 3) (emphasis added) ("Plaintiff had previously raised

concerns to Southern University officials about the hazing death of student Caleb Wilson[, noting] that [redacted] was present during events under investigation in connection with the death of Caleb Wilson. . .. The ban followed Plaintiff's protected reports and questions about the death of Caleb Wilson *and* followed Plaintiff's disability-related access request. The timing and content support the inference that retaliation and interference was a substantial or motivating factor."). Under Section 504, "to satisfy the solely part of the solely by reason of element, the disability must have been the *only* cause of the . . . conduct that triggered the discriminatory action." *Shaikh v. Texas A&M Univ. Coll. of Med.,* 739 F. App'x 215, 222 (5th Cir. 2018) (citation and quotations omitted) (cleaned up). Plaintiff has not met this standard as he alleges he was banned because of his disability request *and* his report regarding Caleb Wilson's death. Thus, Plaintiff has failed to properly allege his Section 504 discrimination claim.

Under the ADA, "the causation standard [] is a motivating factor test[; the] discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the decision making process and have a determinative influence on the outcome." *Kennedy v. Parkview Baptist Sch., Inc.,* No. CIV.A. 13-478-SCR, 2014 WL 7366256, at *7 (M.D. La. Dec. 24, 2014), *aff'd,* 618 F. App'x 233 (5th Cir. 2015) (citations omitted). The disability must be "'a factor that made a difference in the outcome,' not one that was necessarily the 'sole cause' of the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996)). Plaintiff may have properly alleged causation under the ADA, but due to the other deficiencies in his ADA allegations, Plaintiff fails to properly allege a claim under the ADA for discrimination as well.

**ii. Title II ADA and Section 504 Retaliation Claims**

"Regardless of whether a party is ultimately successful in their underlying case, a plaintiff may nevertheless pursue a retaliation claim under the ADA and the Rehabilitation Act." *Smith ex rel. C.R.S. v. Tangipahoa Par. Sch. Bd.*, No. CIVA 05-6648, 2006 WL 3395938, at *13 (E.D. La. Nov. 22, 2006) "In addition to having virtually identical requirements for bringing suit, [Section 504] expressly incorporates the anti-retaliation provision of [] the ADA." *Id.* (citations omitted). The ADA prohibits "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C.A. § 12203(a).

To prove a *prima facie* retaliation claim, a plaintiff must prove "(1) that the plaintiff engaged in protected activity, (2) that an adverse action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Id.*; *see also Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 304 (5th Cir. 2020). When a plaintiff seeks compensatory damages, the plaintiff must "prove that the defendant intentionally discriminated against him." *Lamar Consol. Indep Sch. Dist. V. J.T. b/n/f April S.*, No. 4:20-cv-02353, 2023 WL 2652261, at *4 (S.D. Tex. Mar. 24, 2023); *see also Delano-Pyle v Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination.").

To survive a dismissal at the pleadings stage, a plaintiff must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin,* 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted). "A district court may rely on the prima facie elements of a claim 'to frame [its] inquiry' at this stage." *King v. Acad. of Am.*, No.

3:24-CV-903-K-BN, 2024 WL 2946136, at *5 (N.D. Tex. May 6, 2024), *report and recommendation adopted,* No. 3:24-CV-903-K, 2024 WL 2946993 (N.D. Tex. June 11, 2024) (citing *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023)).

Plaintiff alleges: "Plaintiff engaged in protected activity by requesting accommodation and opposing disability-based barriers. Defendants retaliated against and interfered with the exercise and enjoyment of ADA and § 504 rights by imposing and maintaining a campus ban and escalating to law enforcement rather than engaging in a good-faith interactive process. Plaintiff seeks declaratory relief, prospective injunctive relief, and available compensatory relief." (R. Doc. 33 at 4).

Attempting to secure accommodations is a protected activity under the ADA and Section 504. *See Smith*, 2006 WL 3395938 at *13; *Tabatchnik v. Cont'l Airlines,* 262 Fed. Appx. 674, 676 (5th Cir. 2008) (per curiam) ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity."). Plaintiff states he "requested a reasonable modification to access the front entrance due to disability-related functional limits associated with the car-line process and related triggers [and] informed Defendant Jones of his disability and requested a reasonable modification[.]" (R. Doc. 13-1 at 2). This is a protected activity under the ADA and Section 504. In his Reply, Plaintiff also states he filed a grievance through the Office of Compliance, which is a protected activity, but his grievance was filed after the ban occurred and therefore cannot serve as the basis for a retaliation claim. *Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 306 (5th Cir. 2020).

Further, Plaintiff alleges an adverse action, namely being banned from the School, occurred. (R. Doc. 33 at 2). Without concluding whether this constitutes an adverse action, Plaintiff fails to establish a causal connection between the ban and the request for

accommodations. "A plaintiff must 'allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link between her conduct and the alleged retaliation.'" *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024) (citing *Wright v. Union Pac. R.R. Co.,* 990 F.3d 428, 434 (5th Cir. 2021)). "While generally, a causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity, it can also be established simply by showing close enough timing between the two events." *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (cleaned up).

Plaintiff states he "requested a reasonable modification to access the front entrance due to disability-related functional limits associated with the car-line process and related triggers," (R. Doc. 33 at 2), but does not clearly state when this request occurred. Plaintiff alleges that prior to the August 7, 2025 incident, "[h]e had previously been permitted to pick up at the front entrance without incident," (R. Doc. 33 at 2), so it is unclear when Plaintiff's initial request occurred in relation to the August 7, 2025 incident. Plaintiff claims, regarding the August 7, 2025 incident, "[a]fter [he] informed Defendant Jones of his disability and requested reasonable modification, Jones refused Plaintiff entry, escalated the encounter, and, without lawful justification, pushed and otherwise assaulted Plaintiff, then caused law enforcement to be summoned by knowingly or recklessly communicating materially false allegations of assault to school personnel and law enforcement." (R. Doc. 33 at 2). Again, it is unclear exactly when Plaintiff made the accommodation request to Jones or if he is alleging that his request happened at the same moment he was violating the carpool procedure by attempting to enter the school. Further, Plaintiff states the ban was implemented following the August 7, 2025 incident but does not

provide further information regarding the timing of the implementation of the ban or how it was communicated. (R. Doc. 33 at 2).

Without further information, a close temporal proximity cannot be established between the ban and Plaintiff's request for accommodations. Plaintiff does not specify the manner or time by which he first made his request for accommodations or whether multiple requests were made. Plaintiff also states he was previously allowed to use the school's front entrance for pick up, so his request for accommodations was met at one time and did not appear to be at issue for the School prior to the August 7, 2025 incident. Plaintiff also does not provide specific timing of the implementation of the ban. Plaintiff makes conclusory statements that the ban was the result of his request for accommodations, but the allegations indicate that the ban followed the physical altercation with Jones. In his first iteration of the complaint, Plaintiff acknowledges that he was denied entry but apparently grabbed the entrance to the door anyway.

More information regarding the specific timing of events is required to establish a causal connection. Without further information, the August 7, 2025 physical incident seems to be the catalyst for the ban, not Plaintiff's request for accommodation. Additionally, Plaintiff states the ban followed his reports and questions about the death of Caleb Wilson. (R. Doc. 33 at 3). Therefore, Plaintiff fails to state a claim for retaliation under Title II of the ADA and Section 504. Plaintiff will be given one last opportunity to amend his pleading to address the deficiencies above.

**III. Plaintiff's Claims Against the School**

The School, which Plaintiff alleges "is operated under the authority of Southern University[,]" (R. Doc. 33 at 1), is not a proper party for this lawsuit. "Only [the] Board, and not the University itself, can sue or be sued." *Richardson v. S. Univ.,* 118 F.3d 450, 456 (5th Cir.

1997) (citing La. R.S. 17:3351A(1) (West 1982); *Muhammed v. Board of Supervisors of Southern Univ.,* 715 F. Supp. 732, 733 (M.D. La. 1989); *Emoakemeh v. Southern Univ.,* 654 So.2d 474, 475 (La.Ct.App. 1st Cir.1995) (suing the State of Louisiana "through the Southern University Board of Supervisors"); *Marson v. Northwestern State Univ.,* 607 So.2d 1093, 1095 (La. Ct. App. 3d Cir. 1992) (citations omitted) (holding that plaintiff had no cause of action against Northwestern State University, but rather against the Board of Trustees, who "under the constitution and statutes, is the right defendant under its supervisory powers")). Thus, only Defendant, the Board of Supervisors of Southern University and A&M College, is the proper party for any of Plaintiff's claims against the School such that the School may be dismissed.

**IV. Plaintiff's Claims Against Brister and Pierre in Their Official Capacities**

Other than listing them as defendants, the only time Plaintiff mentions Brister and Pierre in their official capacities in the Amended Complaint is as follows: "Plaintiff seeks prospective relief [under *Ex parte Young*] against Director Herman Brister and Chancellor Pierre in their official capacities to end ongoing violations of federal law. Relief sought includes rescission of the campus and events ban, implementation of a lawful ADA and Section 504 process, and specific reasonable modifications for front-entrance access." (R. Doc. 13-1 at 5). *Ex parte Young* provides jurisdiction over official-capacity suits because it can prevent Eleventh Amendment immunity. *See McCarthy ex rel. Travis v. Hawkins,* 381 F.3d 407, 410 (5th Cir. 2004).

The Court finds Plaintiff's claims against Brister and Pierre in their official capacity are the same claims Plaintiff has brought against Defendant. *See Adams v. City of Shreveport*, 269 F. Supp. 3d 743, 752 (W.D. La. 2017) (quotations and citation omitted) ("A claim against a state or municipal official in his official capacity generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."). As the Court has already recommended

the dismissal of the claims Plaintiff brings against Defendant, Plaintiff's claims against Brister[5] and Pierre in their official capacities may be dismissed as well.

**V. Plaintiff's Preliminary Injunction Request Should Be Denied**

"A party seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Novartis Pharms. Corp. v. Fitch*, No. 24-60342, 2026 WL 963504, at *1 (5th Cir. Apr. 9, 2026) (citations omitted). As it is clear from the above analyses that there is no likeliness of success regarding Defendant, or Brister and Pierre in their official capacities, he cannot establish the first element above such that his preliminary injunction request should be denied.

**VI. Plaintiff's Remaining Allegations**

All claims against the School and Pierre will be dismissed. Brister, in his official capacity, may also be dismissed as a party to the lawsuit. Plaintiff will be given an opportunity to amend the allegations against the Board with respect to his ADA and Section 504 Retaliation claims. All other claims against the Board will be dismissed. Failure to amend as ordered will result in all claims against the Board being dismissed and the Board will no longer be a party.

Plaintiff's remaining allegations include: (1) a First Amendment 42 U.S.C. § 1983 claim against Brister, individually, (2) a due process 42 U.S.C. § 1983 claim against Brister, individually, (3) a state law defamation claim against Jones, individually, and (4) state law assault and battery claims against Jones, individually. Since Plaintiff's First Amended Complaint

---

[5] Plaintiff has not brought any 42 U.S.C. § 1983 claims against Brister or Pierre in their official capacities, only Brister in his *individual* capacity.

was entered into the record on July 27, 2026, Brister, in his individual capacity, has not yet been served.

**VII. Conclusion**

Based on the foregoing,

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss Amended Complaint (R. Doc. 10) be **GRANTED IN PART.** All claims against the Southern University Lab **SCHOOL**, John K. **PIERRE**, and Herman **BRISTER**, in his official capacity, be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the ADA and Section 504 claims against the **BOARD** of Supervisors of Southern University and A&M College be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff be granted leave to amend the retaliation allegations against the **BOARD** within fourteen (14) days of the acceptance of this report and recommendation or as otherwise ordered by the Court. If Plaintiff fails to cure the above-mentioned deficiencies by amending the Complaint, all claims against the Board should be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Preliminary Injunction Request (R. Doc. 18) be **DENIED**.

Signed in Baton Rouge, Louisiana, on August 6, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**